## Joseph Stull, Plff. in Err., *v.* Charles E. Weigle.

Where a farmer gives a wagon to his son, who is of full age and who resides with him, to pay in advance for the son's services on the farm, the fact that the wagon remains and is used on the farm as well by the son as by the father, is not *per se* a badge of fraud. It is for the jury to say whether, under all the circumstances, the transaction is bona fide.

(Argued February 9, 1887. Decided February 21, 1887.)

July Term, 1886, No. 215, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, and CLARK, JJ. Error to the Common Pleas of Somerset County to review a judgment on a verdict for the plaintiff in an action of trespass. Affirmed.

NOTE.—Retention of possession by vendor as constituting a badge of fraud, see editorial note to Mobile Sav. Bank v. McDonnell, 9 L. R. A. 645.

At the trial, before BAER, P. J., the following facts appeared:

The plaintiff, Charles E. Weigle, son of Josiah J. Weigle, attained majority January 18, 1884. On the same day he agreed to remain on the farm and work for his father for one year for $100.

In May, 1884, the father bought a wagon for $100 or $105. There was testimony for the plaintiff that the father sold the wagon during May to the son; that the son took exclusive control of it, although it remained on the farm, and that thereafter the father used it with the son's consent. There was contradicting testimony as to the nature and date of the transaction. The father paid the maker for the wagon in July, 1884.

On January 5, 1885, the defendant, a constable, in execution of a fi. fa. on a judgment against the father, levied on the wagon as the property of the father and sold it. After the levy and before the sale the father made an assignment for the benefit of creditors. Between the date of the assignment and the day of sale the son notified the defendant that he claimed the wagon.

The son brought this action to recover damages for the alleged wrongful sale of the wagon.

The charge of the court was as follows:

This is an action brought by Charles E. Weigle against a constable. When a constable levies on property, supposing he is levying upon the property of the defendant in the execution, and he happens to get the property of somebody else, he exposes himself to the risk of a suit for trespass; in which if the party who brings the suit proves that the property was not the property of the defendant in the execution, he can recover from the constable the value of the property. This is a case of that kind. The facts are before you, and the court will not advert to them any further than becomes absolutely necessary on questions of law involved; and the principles of law are not very numerous.

The evidence, if believed, shows that the defendant, a constable, by virtue of an execution, levied on and sold a wagon as the property of Josiah J. Weigle, on an execution against Josiah J. Weigle. The wagon sold for $50 or thereabouts at the constable's sale; and it cost, some months before that when bought, at which time it was new, $100 or $105. The evidence is that it had not been used much up to that time, and that the value at the time it was purchased or the price agreed to be paid

for it was $100 or $105.    How much it was worth the day of
the sale by the constable is a question of fact which you must
determine from all the evidence in the case, if it should turn on
the value of the wagon.    The plaintiff, Charles E. Weigle, sues
this constable in trespass for this seizing and selling of the
wagon, and alleges that the wagon was his and not his father's,
and that it was not liable for his father's debt.    If it was his, if
he owned it in his own right, had paid for it, and had such pos-
session of it as would protect it against his father's creditors, his
position would be right.    That depends upon how you may find
from the charge further on.    That the plaintiff earned $100,
which his father agreed to pay him for services rendered after
he was of full age, is testified to by the plaintiff, his father,
mother, and brother.    You have heard all the testimony and it
is for you.

The plaintiff alleges that he bargained with his father, some
time after he had commenced to work on the contract for $100
a year, to receive and take, in consideration for the year's pay,
which had been fixed at $100, this particular wagon which the
father had got from Heffley, and for which he paid Heffley $100,
the full value, for the year's services; and this was at a time
when only part of the labor had been performed.    The plaintiff
and his father testify that the wagon was delivered at that time
to the son, and that the son took it and held possession of it from
that time on.    You will remember what he testified about the
sale and delivery.    You heard the testimony as given by the
father, the sons, and the mother, and also the testimony of the
witnesses Glessner and Speicher and some others.

If the wagon was honestly to be and become the wagon of the
son at the end of the year, after the services had all been
rendered, and if the constable levied on and seized the wagon
before the end of the year, and before the wagon would become
the son's by such agreement, before actual delivery, then such
judicial sale would be free from the claim of the son, and his
suit would have to fail, even though he had made an honest
bargain and honestly served his father, because, if he made the
bargain and did not get the wagon at all before somebody seized
it and levied upon it as the property of his father, it would be too
late.    The son denies that these were the facts.

To constitute a sale valid as between father and son, as against
the father's creditors, the sale must have been made in good faith

between the father and the son; it must have been for a valuable consideration; and it must have been free from fraud, because it might be in good faith, and it might be on a good or valuable consideration, and still be fraudulent. There are two kinds of fraud, as you will see as we go further. A contract to be free from actual fraud must be bona fide, that is made in good faith, and on a valuable consideration.

In the case in hand, if the evidence is believed, so far as a subsequent creditor is concerned, the bargain between the father and the son must have been in good faith; he had no claim at that time that could be affected by it. If the evidence is believed that he was to work a year, or did work a year for it, at a consideration of $100, and got it, then that was a valuable consideration; and, if you find that that was so, then we say to you there is no actual fraud in this case.

Actual fraud must be some act done by the parties for the purpose of deceiving or cheating, or by virtue of some personal relation which prevents one creditor from having an equal chance with the rest. Where a debtor prefers one creditor by transferring to him property at a full value in payment of a debt, in an open manner and without any object other than the payment of the debt, this would be both bona fide and for a good or valuable consideration; and if he, in like good faith, bargains for work to be done, and pays for it in advance, this in itself, as against debts subsequently contracted, would not be a case of actual fraud.

But the defendant claims that even if there is no actual fraud the verdict belongs to him because of legal fraud, and asks us in a point to say to you, "that under all the evidence the verdict must be for the defendant." That, I take it, means that he takes the position that there is legal fraud involved here, and asks the court to say so to the jury, which would end this case. We do not intend to affirm that point; we propose to submit the question to you, as to whether there was legal fraud in this transaction or not, after defining fully to you what constitutes legal fraud.

Legal fraud is fraud inferred, as matter of law, on all the facts that exist in the case. It does not require anybody to come here and swear that there was fraud. Legal fraud, we say, is that which would be inferred, as matter of law, from a certain existing state of facts in the case; and it arises not necessarily from a vicious contract. We say it does not necessarily

arise from a vicious contract, but from a violation of law. The contract may have been fair; it arises from some act which the law considers fraudulent, even though the parties consider it honest; from a contract honest in itself but which, from its tendency to mislead or violate public or private confidence, becomes a fraud.

The law is that a sale of personal property must be accompanied with a delivery of possession; that is, there must be an actual change of the possession over to the buyer; and the retention or holding back of the property or the possession of the property by the seller is a fraud in law, even if he did get his money for it, so far as it affects creditors, even though the bargain and consideration were honest and fair.

In the sale of personal property such possession must be taken as the thing sold is capable of; because you cannot deliver the same possession of an immense pile of lumber, for instance, that you can of many other articles; it may be on the edge of a wharf, where there would not be room enough, or on the bank of a river; or it may be a floating raft in a river, so that you cannot immediately get at it. Therefore, we say such possession must be taken as the thing sold is capable of under all the circumstances that surround the transaction at the time. If the thing sold is capable of immediate removal, it should at once be removed— possession at once taken and exclusively held by the buyer. A concurrent or joint possession by both, that is, where the seller and the buyer afterwards both hold possession, each using the article on occasion as it suits him, even though done by the consent of the other party, given at the time, is not sufficient.

If the jury finds such a concurrent or joint possession in this case, and not an exclusive one, the sale is void under the principle of being a fraud in law. Whether a wagon is such an article as a buyer could readily take possession of and remove out of the possession of the seller, and whether the surrounding circumstances are such as to show that this wagon could have been readily removed, this jury should be just as able as any other jury in the world to say, because this is a plain proposition of common sense for you to apply to the ordinary transactions of life. That a son of full age hired by, and working for, his father on the farm, might, in good faith, buy, pay for, and hold personal property on the farm, cannot well be doubted, if he so holds and uses it as to show the possession and ownership to be

exclusively in him; if the possession has been delivered to him, and he so holds and uses it as to show to everybody that the ownership is exclusively in him, and in such a way as is consistent with the nature of the property; and this he could do as against his father's creditors. But a son cannot buy a piece of property on a farm from his father and hold it against his father's creditors, if the possession was not actually delivered over, taken, and held exclusively by the son, if the article sold was capable of such delivery and of the holding of such possession.

The plaintiff alleges that he bought the wagon, that the possession was delivered to him, and that he held it exclusively. Whether this was so or not is a matter for you to determine from the facts in evidence. What was done with the wagon after the purchase by the son ? Where and how did he take possession of it ? Where was it placed ? What was done with it afterwards ? How was it used ? Who exercised ownership over it, so far as the public could see ? All this you must look to in ascertaining whether there was an actual delivery and exclusive possession.

It is true that Weigle's declaration that the wagon was his, made after the alleged sale to his son, as argued by the counsel here, would not destroy the son's title. If you buy a horse from me and pay me for him, and I afterwards tell a third party that he is mine, that does not make him mine. His declaration became evidence in the case because Weigle was a witness on the stand, and they interrogated him on that; and you have to look at that so far as it affects his testimony in this case.

It is also true that Weigle is not now insolvent; he owns a farm and that farm is, so far we know, free from debt. He owned the farm before, but about the time of this transaction he was in debt. This, however, does not have much bearing on the question on which this case turns, because it turns on the question of legal fraud, as we have defined it; and such a question could arise, even if a man had property, as affecting a creditor who subsequently levied upon some particular piece of personal property, and sold it.

If you should find this transaction free from legal fraud, that is, if you should, under the charge and the evidence, find that the sale by the father to the son was made in good faith, for a valuable consideration—which we have said the services would be—

and not made to hinder and delay creditors, and that actual possession was delivered, and that the son afterwards held exclusive and not concurrent possession with the father, then your verdict should be for the plaintiff—for the value of the wagon.

But if you find the bargain between the father and the son to have been ever so honest, and the labor to have been fully performed in payment for the wagon, but that actual possession was not delivered, or if delivered, that the son did not hold the exclusive possession, but held it concurrently with the father, then the transaction would be a fraud in law, and the verdict should be for the defendant.

The plaintiff asked the court, *inter alia,* to charge:

That Josiah J. Weigle had a legal right to contract with his son, Charles E. Weigle, when he became of age, for future services; and that if the jury shall find that they did make a contract on or about the 18th of January, 1884, that Charles should work for him for one year for $100 and that he commenced to work at once and continued for a year; that in May, 1884, the father agreed to pay him for the year's work with the wagon in dispute; that the wagon was at once delivered to the son; that the son used and claimed it as his own; and that the debt of Henry Glessner, and on which the wagon was sold as the property of the father, was not contracted until about December, 1884, then the sale was valid, even if the jury should believe that Josiah J. Weigle, at the time of the levy and sale by the constable, was in failing circumstances.

*Ans.* We affirm this point, if the jury find that the wagon was delivered to the son, and exclusive possession of it taken and held by the son.

The verdict was for the plaintiff for $75.

The assignments of error specified the answer to the plaintiff's points above, and the refusal of the defendant's point.

*Coffroth & Ruppel,* for plaintiff in error.—Time and again has this court held that in order to render a sale of chattels effective as against creditors of the vendor it is necessary that the sale be accompanied by delivery of possession, and that the vendee's possession must be actual, open, continued, and exclusive.

From Clow v. Woods, 5 Serg. & R. 275, 9 Am. Dec. 346,

down to Crowley v. Irvin, 1 Pennyp. 227, there is an unbroken line of decisions adhering to the same rulings, and recognizing but a single exception.

Fraud in law, without regard to the intent of the parties, is a question for the court and not for the jury to decide. Where there is no evidence that the possession accompanied and followed the transfer, the plaintiff fails in making out his case, and the court on the evidence ought so to instruct the jury. Young v. M'Clure, 2 Watts & S. 151; Dewart v. Clement, 48 Pa. 414; Barr v. Reitz, 53 Pa. 257; Brawn v. Keller, 43 Pa. 104, 82 Am. Dec. 554; Barr v. Boyles, 96 Pa. 34.

The reasons upon which the rule requiring delivery of possession is founded are: first, to prevent fraud; and second, to guard against false credit. Fitler v. Maitland, 5 Watts & S. 307, M'Bride v. M'Clelland, 6 Watts & S. 95.

In all the cases where the apparent want of change of possession was not declared fraudulent *per se,* the property was of such a nature that it could not readily be removed, as large piles of lumber, logs, etc., or the vendee was the owner or lessee of the real estate on which the property was located; or he had or acquired control of the real estate; and then in every case it was held that the vendee was bound to do everything possible to inform the public of the transfer of the property, and that the vendor should hold out no indicia of ownership. Billingsley v. White, 59 Pa. 466; Miller v. Garman, 69 Pa. 134.

In Crawford v. Davis, 99 Pa. 576, the son became the lessee of and managed the farm.

In McClure v. Forney, 107 Pa. 414, the daughter was the owner of the farm and had exclusive possession of the mare for a considerable length of time, and at the time of the levy the mare was only temporarily in the possession of the vendor. See also Smith v. Crisman, 91 Pa. 428, and Barr v. Boyles, 96 Pa. 31.

In Steelwagon v. Jeffries, 44 Pa. 407, the father resided with his daughter and son-in-law, and purchased from the son-in-law all the household furniture in the house in which they resided. The name of the son-in-law was taken from the door; otherwise the relations of the parties continued apparently as before. This court held that there was no such change of possession as to enable the vendee to hold the property against creditors of the vendor.

A case nearly parallel to this one is Crowley v. Irvin, 1 Pennyp. 227, where a father sold a mare to his daughter, but the mare was afterwards kept with the father's other personal property, the same as before the sale. Declarations that the mare had been sold were frequently made subsequent to the sale, by both vendor and vendee. Before the levy was made the father leased the farm on which the mare was kept, to the daughter. This court held that there was not a sufficient delivery of the property as against creditors.

*Valentine Hay,* for defendant in error.—A case of conflicting evidence as to a change of possession is a question of fact for the jury under proper instructions from the court. So held in Forsyth v. Matthews, 14 Pa. 100; Chase v. Ralston, 30 Pa. 539; McKibbin v. Martin, 64 Pa. 352, 3 Am. Rep. 588; Dunlap v. Bournonville, 26 Pa. 72; McVicker v. May, 3 Pa. St. 227, 45 Am. Dec. 637; Barr v. Boyles, 96 Pa. 31; Barr v. Reitz, 53 Pa. 257; Billingsley v. White, 59 Pa. 466; Crawford v. Davis, 99 Pa. 576, and in McClure v. Forney, 107 Pa. 414.

A sale of carpet by one brother to another living in same house presents a question for the jury to determine if there was a sufficient change of possession. Evans v. Scott, 89 Pa. 136.

Among the later cases to the same effect are Smith v. Crisman, 91 Pa. 428; McMarlan v. English, 74 Pa. 296; Parks v. Smith, 94 Pa. 46; Rothermel v. Marr, 98 Pa. 286; Crawford v. Davis, 99 Pa. 576; McClure v. Forney, 107 Pa. 414; Chase v. Garrett, 1 Sad. Rep. 16, and Steele v. Miller, 1 Sad. Rep. 151. Cessna v. Nimick, 113 Pa. 70, 3 Cent. Rep. 603, 4 Atl. 193.

Separation of the property from the possession of the vendor is indeed necessary, but it is not a physical separation—a separation by space or distance. It implies nothing more than a change of the vendor's relation to it as owner, and consists in the surrender and transfer of his power and control over it to the vendee. Evans v. Scott, 89 Pa. 136; Billingsley v. White, 59 Pa. 466; Steele v. Miller, 1 Sad. Rep. 151, and Cessna v. Nimick, 113 Pa. 70, 3 Cent. Rep. 603, 4 Atl. 193.

Crowley v. Irvin, 1 Pennyp. 227, was a case of concurrent possession.

The court said in the case of McVicker v. May, 3 Pa. St. 227, 45 Am. Dec. 637, "But if mere cohabitation were a badge of fraud, a father's sale to his unmarried son would seldom be sus-

tained. It certainly was not necessary for the son to turn his father out of doors."

PER CURIAM:

This is rather a close case; but, under the modern authorities in this state, we think the evidence presented a case proper for the jury. The occupation of the vendee was such that it was difficult for him to have any other possession of the property than that which he had, without depriving himself of the convenient use thereof.

The evidence was submitted in a correct manner.

Judgment affirmed.